

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

LEE S. ROSE

No. 24 CR 103-2

Judge Lindsay C. Jenkins

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant LEE S. ROSE, and his attorney, ADAM J. SHEPPARD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Plea Agreement have agreed upon the following:

### Charges in this Case

2.     The indictment in this case charges defendant with nine counts of wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts One through Nine); five counts of interstate transfer of money taken by fraud, in violation of Title 18, United States Code, Section 2314 (Counts Ten through Fourteen); one count of money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count Fifteen); and three counts of false statements, in violation of Title 18, United States Code, Section 1001(a)(2) (Counts Sixteen through Eighteen).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charges to Which Defendant Is Pleading Guilty**

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment:  Count One, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; and Count Eleven, which charges defendant with interstate transfer of money taken by fraud, in violation of Title 18, United States Code, Section 2314.

## **Factual Basis**

6.    Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Eleven of the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a.    **Count One (Wire Fraud)**:  Beginning no later than in or about 2019, and continuing until at least 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ROSE knowingly devised, intended to devise, and participated with co-defendants Edward L. Wooten, John L. Krcil, and with others, in a scheme to defraud and to obtain money from investors, including, but not limited to, the victim investors listed below, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343.

2

During the relevant time, ROSE held himself out as an officer or representative of a purported investment company called "Black Lion Investment Partners Inc." (Black Lion), which was incorporated in the State of Wyoming, but which had no actual business office. ROSE also held himself out to potential Black Lion investors as an agent or representative of a certain law firm in Chicago (the Law Firm), and as an administrator of a Law Firm escrow account, even though he was never a partner or employee of the Law Firm. ROSE also incorporated an entity in Wyoming, known as "ITN Capital and Development Inc." (ITN Capital), listing the same purported business address as Black Lion, and identifying himself as that company's president.

Co-defendant Edward Wooten was the owner and chief executive officer of Black Lion. Co-defendant John Krcil also was an officer of Black Lion.

### Victim Investors

Investor 1 was a resident of the State of Idaho.

Investor 2 was a children's charity in the State of Oklahoma.

Investor 3 was a real estate business in the State of Florida.

Investor 4 was a resident of the State of California.

Investor 5 was a resident of the State of California.

### The Investment Fraud Scheme

ROSE, together with co-defendants Wooten and Krcil, fraudulently induced people to provide them with money to invest, falsely promising such investors that

3

they could participate in trading programs involving high-yield financial instruments, while their investment funds would be maintained safely on deposit in a bank account, without a risk of loss. Wooten, ROSE, and Krcil then converted investor funds to the personal use and benefit of themselves and others, without the knowledge and consent of the investors, and failed to return victim investors' funds, thereby causing such investors to lose hundreds of thousands of dollars.

During the scheme, ROSE and his co-schemers knowingly made (and knowingly caused to be made) false and fraudulent representations and promises to investors, suggesting that they could earn substantial investment returns by participating in so-called "private placement" trading programs or "platforms" involving "investment grade fixed income securities" of "top-rated" banks or financial institutions, yielding multi-million-dollar investment returns within short periods of time, after which the investors' original investment capital, along with their share of the trading profits, would be paid to them.

ROSE and his co-schemers documented (and caused to be documented) their false and fraudulent representations and promises in trading contracts tendered to interested investors by or on behalf of Black Lion, the purported "Investment Manager." Among the false and fraudulent representations and promises made in the trading contracts were that investor funds would be placed in a "Blocked funds financial enhancement program" (also referred to in the contracts as the "trade platform"), which was "to be issued by Black Lion Investment Partners Inc.," and that

4

investor funds would be returned if the "trade platform fail[ed] to perform" within 60 days from the date of the contract.

ROSE and his co-schemers misled investors into believing that their investment funds would not be placed at risk once they deposited their funds into a certain escrow account maintained at a reputable bank under the name of the Law Firm in Chicago, and that their funds would not be moved from the escrow account until such funds were returned to them. ROSE and his co-schemers created and tendered to investors, and caused to be created and tendered to investors, fraudulent escrow agreements and instructions to convince investors that their funds would be held safely in the Law Firm escrow account throughout the duration of the trading program. Contrary to the false representations and promises made to investors, ROSE and his co-schemers intended to transfer investor funds out of the escrow account without the investors' knowledge.

In furtherance of the scheme, ROSE persuaded an elderly partner of the Law Firm to provide him with access to a dormant Law Firm escrow account so that ROSE and his co-schemers could use that account in connection with their investment fraud scheme. ROSE persuaded the Law Firm's elderly partner to add ROSE's name to the escrow account as an authorized signatory, thereby enabling ROSE to conduct transactions on that account during the course of the scheme. After ROSE obtained signatory authority over the escrow account, he took steps to conceal his subsequent transactions from the Law Firm and its partners by (a) removing the elderly partner's

5

son as a co-signer on the escrow account, and (b) directing the bank to stop mailing account statements to the Law Firm.

ROSE and his co-schemers caused and directed investors in different states to transfer their investment funds to the Law Firm escrow account, an account over which ROSE then had control. After receiving investor deposits into the Law Firm escrow account, ROSE transferred investor funds away from the Law Firm escrow account to other bank accounts controlled by him, by Wooten, by Krcil, and by others, without the investors' knowledge and consent. Wooten, ROSE, and Krcil then converted investor funds to the personal use and benefit of themselves and others.

Contrary to the representations and promises made to investors, ROSE and his co-schemers did not (a) use all investor funds to conduct trades or to otherwise facilitate trades in high-yield bank instruments; (b) pay any trading profits to victim-investors; or (c) return all victim-investors' funds as promised, despite investors' repeated requests for the return of their funds. ROSE and his co-schemers instead made false promises to return investors' funds and gave excuses as to why their funds could not be returned upon demand, including false claims that the federal government and, in particular, the Department of Homeland Security or the Treasury Department, had delayed the return of investor funds.

ROSE and his co-schemers stopped using the Law Firm escrow account after an investor filed a civil lawsuit in federal court seeking to freeze the account and to get back his money. ROSE and his co-schemers nonetheless continued their fraud

scheme, but they used different bank accounts, including a bank account that ROSE had opened under the name of ITN Capital, to receive incoming transfers of funds from new investors and, instead of asking new investors to sign an "Escrow Agreement and Instructions" associated with the Law Firm escrow account, they began asking new investors to sign a "Paymaster Agreement and Instructions." The paymaster agreements and trading contracts provided to new investors misled them into believing that their investment funds would be safe, and not placed at risk, by falsely stating that their funds would be "held" and "blocked" in the bank account for the duration of the trading program and never moved out of the account until such time when the funds would be returned to the investors.

During the scheme, ROSE and his co-schemers concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme, the purposes of the scheme, and the acts committed in furtherance of the scheme, including by lying about the location and disposition of investor funds when questioned by officials of the U.S. Securities and Exchange Commission and agents of the Federal Bureau of Investigation who were investigating the investment fraud scheme.

As a result of the false and fraudulent pretenses, representations, promises, and acts of ROSE and his co-schemers, victim investors suffered losses in an amount totaling at least $987,000.

For the purpose of executing the scheme described above, on or about February 28, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere, ROSE knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate transfer of funds in the amount of $285,000, from Investor 1's bank account to the Law Firm escrow account.

b.      **Count Eleven (Interstate Transfer of Money Taken by Fraud)**: On or about March 21, 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ROSE knowingly caused to be transmitted and transferred in interstate commerce, money in an amount more than $5,000, namely, an interstate transfer of funds in the amount of $825,000, from the Law Firm escrow account to a personal bank account of co-defendant Wooten, knowing that such funds had been converted and taken by fraud, in violation of Title 18, United States Code, Section 2314.

Those funds were converted and taken by fraud from a victim investor, namely, Investor 6, who was a resident of Florida. First, on March 18, 2019, Investor 6 transferred $3,000,000 of his own money to the Law Firm escrow account based on false representations and promises that he would receive a $1.55 million return on a $3 million investment, payable in fourteen monthly installments, plus tens of thousands of dollars in additional fees payable within a year, while his investment funds would be maintained safely on deposit in the Law Firm escrow account. Then

8

on March 21, 2019, ROSE transferred $825,000 of Investor 6's funds from the Law Firm escrow account, in Chicago, to one of the personal bank accounts of co-defendant Wooten, in Georgia, without Investor 6's knowledge and consent. Wooten then disposed of Investor 6's funds for the benefit of himself and others.

ROSE acknowledges that the above funds-transfer was interstate in nature and conducted between banks doing business in interstate commerce.

7. Defendant, for purposes of computing his sentence under Sentencing Guideline § 1B1.2, stipulates to having committed the following additional offense (Count Fifteen, money laundering):

On or about July 2, 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ROSE, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction, namely, an interstate transfer of funds in the amount of $175,000, from one of co-defendant Wooten's bank accounts to the Law Firm escrow account, which financial transaction in fact involved the proceeds of specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, ROSE then knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

9

More specifically, during the period of the wire fraud scheme summarized above (Count One), ROSE and Wooten attempted to mislead Investor 1 into believing that his investment funds were safely on deposit in the Law Firm escrow account, when in fact ROSE had already drawn down the balance in the account (by transferring away funds belonging to Investor 1) without Investor 1's knowledge and consent. In an attempt to mislead Investor 1 into believing that all of his funds were still on deposit, Wooten transferred $175,000 from one of his personal bank accounts to the Law Firm escrow account in order to temporarily inflate the escrow account balance and generate a bank record reflecting that inflated balance. ROSE then emailed a copy of that bank record to Investor 1 to lead him to believe that his funds were safely on deposit in the escrow account, when in fact they were not. ROSE subsequently transferred all those funds, and more, from the escrow account to another bank account controlled by him, thereby drawing down the escrow account balance again, without Investor 1's knowledge and consent.

ROSE acknowledges that the above funds-transfers were interstate in nature and conducted between banks doing business in interstate commerce, and were designed to conceal and disguise the nature, the location, the source, the ownership, and the control of the wire fraud proceeds involved therein.

### **Maximum Statutory Penalties**

8.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      Count One carries a maximum term of imprisonment of 20 years; a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a maximum term of supervised release of three years.

b.      Count Eleven carries a maximum term of imprisonment of 10 years; a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a maximum term of supervised release of three years.

c.      Defendant further understands that the Court must order restitution to the victims of the offenses in an amount determined by the Court.

d.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pleaded guilty, in addition to any other penalty and restitution order imposed by the Court.

e.      Therefore, the total maximum term of imprisonment is 30 years; the total maximum fine is $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater; the maximum term of supervised release is three years; and the total special assessment is $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

9.      Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

11

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offenses and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victims of the offenses.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the 2024 Guidelines Manual.

b. **Offense Level Calculations**.

i. Pursuant to Guideline §§ 3D1.2(c) and (d), the offenses in Count One (wire fraud), Count Eleven (interstate transfer of money taken by fraud), and Count Fifteen (money laundering) are grouped together.

12

    ii.  Pursuant to Guideline § 2S1.1(a)(1), the base offense level for the group is the offense level for the underlying wire-fraud offense from which the laundered funds were derived because (A) defendant committed the underlying offense, and (B) the offense level for that offense can be determined.

    iii.  The offense level for the underlying offense is 25 pursuant to Guideline § 2B1.1 and, more specifically, Guideline § 2B1.1(a)(1), which provides for a base offense level of 7, and Guideline § 2B1.1(b)(1)(J), which provides for an 18-level increase because the combined amount of the loss from the offense and relevant conduct is more than $3,500,000, but not more than $9,500,000.

    iv.  Because defendant is stipulating to a violation of 18 U.S.C. § 1956 (Count Fifteen), as described in paragraph 7 above, the offense level is increased by an additional 2 levels pursuant to Guideline § 2S1.1(b)(2)(B).

    v.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

vii.     Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A, and he otherwise meets the criteria set forth in Guidelines § 4C1.1(a).  Therefore, the offense level is decreased by 2 levels.

c.     **Criminal History Category**.  Based on the facts now known to the government, defendant's criminal history points equal zero and his criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range**.  Based on the Sentencing Guideline calculations set forth above, the anticipated offense level total is 22, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guideline range of 41-51 months of imprisonment, in addition to any term of supervised release, fine, and restitution order the Court may impose.

14

e.     Defendant and his attorney and the government acknowledge that the above Sentencing Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Sentencing Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guideline calculations. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above Guideline calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of such calculations.

f.     Both parties expressly acknowledge that this Plea Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to the victims of the offenses in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16

16.     Defendant agrees that the United States may enforce collection of any fine or restitution order imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court.  In the event of the death or dissolution of, or the government's inability to locate the named recipients of restitution in the Judgment and Commitment Order, defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the Court, or the Crime Victims Fund.

17.     The government agrees not to oppose defendant's request that the Court conduct his sentencing hearing after the trial of co-defendant Edward L. Wooten has concluded.

18.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein (Counts One and Eleven), the government will move to dismiss the remaining counts of the indictment (Counts Two through Ten and Twelve through Eighteen), as well as Forfeiture Allegations One and Two, as to this defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case no. 24 CR 103-2.

20.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity.  The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

21.     Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest, or penalties from defendant or his partnerships or corporations.

### Waiver of Rights

22.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

18

a.    **Trial rights**.  Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

19

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

       v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

       vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

       vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

       b.    **Appellate rights**. Defendant further understands that he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    23.    Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights

specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

24. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Office. Defendant understands that providing false or incomplete information, or refusing to provide his financial information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and for enhancement of his sentence for obstruction of justice pursuant to Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

26. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or

21

probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the tax returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

29.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement.  Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may move to resentence defendant or require defendant's specific performance of this Plea Agreement.  Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

31.    Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

32.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: _August 13, 2025_

**JASON YONAN** Digitally signed by JASON YONAN
Date: 2025.04.07 08:04:41 -05'00'
_____
Jason Yonan on behalf of ANDREW S.
BOUTROS, United States Attorney

_____
LEE S. ROSE
Defendant

_____
BRIAN HAVEY
Assistant United States Attorney

_____
ADAM J. SHEPPARD
Attorney for Defendant